**Dean STRAND and Tory Kaufman, Plaintiffs and Appellees,**

v.

**Carol COURIER, Defendant and Appellant.**

**No. 15801.**

Supreme Court of South Dakota.

Considered on Briefs March 24, 1988.

Decided Dec. 14, 1988.

Patrick W. Kiner, Mitchell, for plaintiffs and appellees.

John R. Steele of Steele Law Office, Plankinton, for defendant and appellant.

EVANS, Circuit Judge.

Defendant Carol Courier (Courier) appeals from a judgment entered against her following a jury verdict granting plaintiff Tory Kaufman (Kaufman) $2,708.40 as the balance due on a remodeling project. The trial court awarded prejudgment interest and costs. We affirm the jury award and the prejudgment interest, but reverse and remand as to costs.

## FACTS

Dean Strand (Strand) worked full-time at the Mitchell Fire Department and worked part-time in his own construction business. Strand was a friend of Courier and her family. He had helped Courier's brother construct a pole shed which contained an apartment where Courier lived. Courier wanted to add a second apartment to the pole shed so she could assist her mother with the care of her father. Courier discussed remodeling with Strand periodically for nine months to one year before construction began.

In late October 1984, the suspended ceiling in Courier's apartment collapsed. Courier hired Strand to repair it. During the ceiling repair, Strand and Courier talked on two or three more occasions about remodeling the new apartment. Eventually they agreed upon a remodeling plan. Strand wrote certain cost figures for the project on what became a kitchen wall that was later painted. Strand recalled the estimate to be:

| Materials | $1,250.00 |
|---|---|
| Electrical | 750.00 |
| Plumbing | 750.00 |
| Labor | 2,000.00 |
| Cupboards | 750.00 |
| Total | $5,500.00 |

Courier recalled the estimate to be in the range of $4,500.00 to $5,000.00, but there was a margin left for unseen things. She asserted, however, that it was firm that it would be less than $5,000.00. She recalled the estimate to be:

| Materials | $1,200.00 |
|---|---|
| Electrical | 500.00 |
| Plumbing | 750.00 |
| Labor | 1,000.00 |
| Total | $3,450.00 |

Courier also testified that Strand was to advise her at any time he thought the job would be going over the $5,000.00 cap she had set. Strand never did so.

Between the negotiations with Courier and the remodeling project actually starting, Strand sold his business to Kaufman. Kaufman was also a full-time fireman and an employee of Strand. Strand testified he agreed to work for Kaufman for one year and to help with the remodeling projects.

Courier claims she had no knowledge of Kaufman's involvement in the job. Strand and Kaufman testified Courier knew of this arrangement throughout the course of the remodeling. While Kaufman did perform work on the project, Strand continued to supervise the work and discuss any changes made with Courier.

Upon completion of the project, Kaufman presented a bill to Courier which, after revisions including the supplier's receipts and all credit, totaled $5,086.21. This amount excluded $500.00 previously paid Strand, $1,103.00 for electrical work and

$1,500.00 for plumbing. This made the total project cost $8,119.21. Courier told Kaufman that she did not hire him and the remodeling project far exceeded Strand's bid of $4,500.00 to $5,000.00. She refused to pay. Courier proceeded to pay many of the materialmen directly.

Strand and Kaufman's complaint sought a $2,787.50 judgment. Courier counterclaimed for $2,392.45 for work negligently performed, work omitted and reimbursement for overpayment of the contract price. Strand testified he had no money due under the contract and that the money due would be payable to Kaufman. The trial court granted Courier's motion for a directed verdict against Strand. Strand and Kaufman's trial exhibit number 2 shows $2,708.40 as the balance due, which was the amount of the jury verdict. Courier raises five issues.

## ISSUE ONE

WHETHER THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE VERDICT OF THE JURY IN FAVOR OF KAUFMAN.

Courier cites no authority for this contention but argues that Kaufman failed to meet the burden imposed by the trial court's instructions.

This court has held on many occasions that authority must be cited to afford a meaningful review of the issues on appeal. *State v. LaCroix*, 423 N.W.2d 169 (S.D. 1988); *State v. Banks*, 387 N.W.2d 19 (S.D. 1986); *State v. Shull*, 331 N.W.2d 284 (S.D. 1983). Even if authority had been cited, we would still hold that sufficient evidence exists to support the jury verdict.

Upon review, the evidence and inferences therefrom are viewed in a light most favorable to uphold the verdict. A verdict must be upheld if there is competent and substantial evidence to support it. *Ebert v. Fort Pierre Moose Lodge No. 1813*, 312 N.W.2d 119 (S.D.1981). Viewing the evidence most favorable to the appellees, a contract existed for a remodeling project. Strand bid the project but Kaufman was the actual contractor. Courier knew of this arrangement. Strand continued to supervise the project and Courier received the benefit of all his services, personal trust and confidence. Additional items of material and labor were added by agreement of Strand and Courier during the work on the remodeling. The jury could reasonably conclude that there was no firm bid, or, that there was a firm bid modified by subsequent agreement of the parties. Courier selected different cupboards, which cost nearly $1,500.00 rather than $750.00. She hired the plumber and knew it would cost $1,500.00 rather than $750.00. Other additions and changes were made by agreement of the parties. The verdict was adequately supported by the evidence.

## ISSUE TWO

WHETHER THE TRIAL COURT ERRED BY FAILING TO INSTRUCT THE JURY ON THE LAW OF UNDISCLOSED AGENCY.

Courier proposed the following jury instruction:

If a contract is made by an agent without disclosing that he is acting as agent for another, his principal, and the contract involves elements of personal trust and confidence as a consideration moving from the agent, contracting in his own name, to the other party to the contract, the principal cannot, against resistance of the other party, enforce the contract. An intention to make the personality of the parties an essential of material part of the contract may be inferred from the circumstances of the negotiation and entry into the contract.

Courier's version of the facts presented at trial show that Strand entered into the remodeling contract with her while Strand was acting as agent for Kaufman, an undisclosed principal.

A person who makes a contract with an agent of an undisclosed principal, intended by the agent to be on account of his principal and within the power of such agent to bind his principal, is liable to the principal as if the principal himself had made the contract with him, unless he is

excluded by the form or terms of the contract, unless his existence is fraudulently concealed or unless there is set-off or a similar defense against the agent. Restatement (Second) of Agency § 302 (1958).

An undisclosed principal upon whose account an agent has acted within his power to bind the principal in making a contract, unless he is excluded by its terms, can require the other party to render performance to him instead of the agent, except in the case of personal services or where performance to the principal would subject the other to a substantially different liability from that contemplated.

Restatement (Second) of Agency § 310 (1958).

■ Courier's proposed instruction is almost identical to the statement contained in 3 Am.Jur.2d Agency § 330 (1986)[1] except it leaves out the phrase "while the contract remains executory." Courier's proposed instruction may have been appropriate if the contract had not been completed and Kaufman sought to enforce the contract. But here the contract was fully executed. Courier had the benefit of Strand's personal trust and confidence in the completion of the contract and, in fact, made no complaint before its completion. Whether the agency was disclosed or undisclosed became irrelevant and the instruction was properly refused.

## ISSUE THREE

### WHETHER KAUFMAN IS ENTITLED TO PREJUDGMENT INTEREST AGAINST COURIER.

The trial court judgment awarded Kaufman prejudgment interest at the rate of 18% per annum on the sum of $2,708.45

from February 1, 1985. Courier claims the damages were neither certain nor capable of being made certain by calculation as required by SDCL 21–1–11. We disagree.

■ The fact that a claim is disputed does not defeat the allowance of interest. *Barton Masonry, Inc., v. Varilek,* 375 N.W.2d 200 (S.D.1985). SDCL 21–1–11 allows prejudgment interest on liquidated and contractual claims. *Winterton v. Elverson,* 389 N.W.2d 633 (S.D.1986). The prevailing party is entitled to prejudgment interest only if damages are certain or capable of being made certain by calculation. *First Nat. Bank of Minneapolis v. Kehn Ranch, Inc.,* 394 N.W.2d 709 (S.D.1986); *Twin City Testing and Engineering Lab, Inc., v. Smith,* 393 N.W.2d 456 (S.D.1986).

■ The damages in this lawsuit are capable of being made certain by calculation even though there was no exact hourly amount established for labor when the parties entered into the contract. The bills did show the hours worked and the hourly rate charged. There was no claim that the hourly rate was not the customary rate charged other customers. The evidence indicates that all materials were at Kaufman's cost. The amount due was easily determined from hours worked times the hourly rate and adding the costs of materials. Exhibit 2 was the final bill that had been sent to Courier. The amount due under this bill had been changed because Courier paid suppliers directly rather than paying Kaufman. While there were some minor inconsistencies in the amounts owed, the jury determined that the final billing was the correct amount. We cannot say that the amounts of damages to be awarded were completely uncertain until the jury returned its verdict. While Kaufman's prayer was for $79.10 more than that awarded, we do not find that this differ-

---

**1.** 3 Am.Jur.2d Agency § 330 provides, in part: If the contract made by an agent acting for an undisclosed principal involves elements of personal trust and confidence as a consideration moving from the agent, contracting in his own name, to the other party to the contract, the principal, while the contract remains executory, cannot, against the resistance of the other party, enforce it, either to compel performance by the other party or to recover damages for a breach. An intention to make the personality of one of the parties an essential or material part of the contract may be inferred, as for example, by a refusal to deal with any other individual of the same class, by the terms of the contract, or merely by circumstances, even though an exclusion of the principal will not be ordinarily presumed.

ence creates such uncertainty that prejudgment interest is unavailable to Kaufman.

Courier's unsuccessful counterclaim does not change the award of prejudgment interest. Had the counterclaim been successful, then damages would not have been certain or capable of being made certain until the jury returned its verdict.

## ISSUE FOUR

### WHETHER COURIER IS ENTITLED TO COSTS AGAINST STRAND.

■ Courier claims she prevailed against Strand and is entitled to costs against him. We disagree. Costs may be allowed to the prevailing party. SDCL 15-17-11. The prevailing party is the party in whose favor the decision or verdict is or should be rendered and judgment entered. *City of Aberdeen v. Lutgen,* 273 N.W.2d 183 (S.D.1979). Costs shall be allowed, of course, to the plaintiff upon recovery of money of $50 or more. SDCL 15-17-11. "Costs shall be allowed to the defendant in actions unless the plaintiff be entitled to costs therein." SDCL 15-17-15. Strand and Kaufman were seeking the same relief or cause of action against Courier. The jury decided against Courier and judgment was entered in Kaufman's favor. Even though Courier's motion for a directed verdict was granted against Strand, we do not find that Courier was a prevailing party. The trial court appropriately refused to enter a judgment in Courier's favor. Costs

**2.** Effective July 1, 1987, SDCL 15-6-54(d) provides:

> Costs and disbursements shall be allowed as provided by statute. If a party wishes to have disbursements and costs of the action assessed, that party must file an application for taxation of costs, and a certificate of service, with the clerk of court. The application shall include a statement in detail of the costs and disbursements claimed and shall be verified by affidavit. The party preparing the application shall forthwith serve a true copy of the application and the certificate of service upon all other parties.
> A party who objects to any part of the application shall serve and file his objections with the clerk of court in writing within ten days of the service of the application on him or he will be deemed to have agreed to the taxation of the costs and disbursements proposed.

could not be taxed in Courier's favor against Strand.

## ISSUE FIVE

### WHETHER KAUFMAN IS ENTITLED TO COSTS AGAINST COURIER.

Defendant claims that Kaufman, even as a prevailing party, was not entitled to costs because of the procedure used to tax costs.

■ The power to award costs is purely statutory. *Buckingham Transp. Co. of Colorado, Inc., v. Black Hills Transp. Co.,* 66 S.D. 433, 285 N.W. 300 (1939).

SDCL 15-6-54(d) [2] provided:

> Costs and disbursements shall be allowed as provided by statute. Costs and disbursements may be taxed by the clerk on two days' notice, and inserted in the judgment. The disbursements shall be stated in detail and verified by affidavit, which shall be filed, and a copy of such statement and affidavit shall be served with the notice. The party objecting to any item shall specify in writing the ground thereof. A party aggrieved by the action of the clerk may file a notice of appeal with the clerk, who shall forthwith certify the matter to the court. The appeal shall be heard upon eight days' notice and determined upon the objections so certified.

Kaufman initially presented an affidavit of costs and a proposed judgment to the trial court. The trial court, on the same

> The written objections must be accompanied by a notice of hearing thereon and shall set forth in concise language the reasons why the costs should not be allowed. Upon receipt of such written objections and the notice of hearing, the clerk shall file the same and forward copies thereof, together with a copy of the application, to the court.
> The decision rendered at the hearing shall be filed as a written order with the clerk, directing that the approved amount of costs and disbursements be inserted in the judgment and docketed.
> If no written objection to the taxation of costs is filed within ten days of service, the clerk shall tax the costs and disbursements as set forth on the application, insert the amount in the judgment, and docket it.
> 1987 S.D.Sess.Laws ch. 397; Supreme Court Rule 86-23.

day, entered the judgment including costs without notice to Courier and without any opportunity for Courier to object. Courier did object to the judgment's inclusion of costs alleging Kaufman failed to comply with the statutory procedures of SDCL 15–6–54(d). Kaufman subsequently filed a new affidavit for costs. He claimed the old costs and some additional costs not contained in the first affidavit. A notice of taxation of costs was mailed to Courier on May 12, 1987, indicating that upon the expiration of two days, costs would be taxed by the clerk. Courier filed objections to the taxation of costs claiming that the clerk was now without jurisdiction to enter a judgment for costs because of the previous judgment entered.

Courier also served a notice of appeal on May 13, 1987. The trial court entered an amended judgment on June 1, 1987. The amended judgment included the additional costs Kaufman sought. Courier served an amended notice of appeal.

 In contested cases SDCL 15–6–54(d) must be adhered to. The statute is meaningless if a party can be awarded costs without notice and a hearing. The costs were improperly awarded in the original judgment. Kaufman then attempted to comply with the statute and Courier objected to the jurisdiction of the clerk to enter costs. The clerk did not tax costs but the trial court entered an amended judgment. We find this procedure improper in this case. SDCL 15–17–27 provides, "In all actions, motions, and proceedings in Supreme, circuit, or magistrates' Courts, the costs of the parties shall be taxed and entered of record separately." SDCL 15–17–28 provides, "Any person aggrieved by the taxation of costs may appeal therefrom to the court or a judge thereof." An order taxing costs is a special order. When it is made subsequent to the entry of a judgment the order may not be reviewed upon appeal from the judgment, but only by a direct appeal from the order. *Sambo v. Semmler,* 61 S.D. 228, 248 N.W. 197 (1933); *Schmidt v. Wildcat Cave, Inc.,* 261 N.W.2d 114 (S.D.1977); *Moritz v. C & R Transfer Co.,* 266 N.W.2d 568 (S.D.1978).

 Since a judgment and the taxation of costs are to be entered separately, an appeal could be taken from a judgment without appealing the costs or an appeal could be taken from the order taxing costs without appealing the judgment. *See* SDCL 15–26A–3(1) and (4).

 Courier's appeal did not deprive the clerk of jurisdiction to tax costs.

 Courier claims that Kaufman waived his right to such costs because of having the first judgment entered. We decide otherwise in view of Kaufman's attempt to comply with the correct procedure after Courier's objection.

The trial court's original judgment is affirmed except as to costs entered in favor of Kaufman. The case is remanded so costs may be appropriately determined.

MORGAN, HENDERSON and MILLER, JJ., concur.

SABERS, J., concurs specially.

EVANS, Circuit Judge, for WUEST, C.J., disqualified.

SABERS, Justice (specially concurring).

I concur.

I write specially on Issue Three to support the conclusion that Strand was entitled to prejudgment interest because his claim was certain or capable of being made certain by calculation through reference to prevailing markets for labor, materials, or values. SDCL 21–1–11. This determination is not changed by the assertion of an unliquidated counter-claim. Therefore, I question the *dictum* set forth at the close of Issue Three concerning a "different" result if the counter-claim had been successful. If relevant, I would follow the decisional rules set forth in Justice Morgan's dissent in *First Nat'l Bk. of Minneapolis v. Kehn Ranch,* 394 N.W.2d 709, 721 (S.D.1986) (Morgan, J., concurring in part, concurring in result in part, and dissenting in part).